UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

AUG 2 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-549-GWU

ROGER COMBS,                                                    PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

Combs

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

Combs

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Roger Combs, was found by an Administrative Law Judge (ALJ), to have severe impairments consisting of obesity, degenerative disc disease of the lumbar spine, cervicalgia and degenerative disc disease of the cervical spine, and mild carpal tunnel syndrome. (Tr. 16). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Combs retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exceptional impairments. (Tr. 347). He: (1) could sit, stand, and walk six hours each in an eight-hour day, but would need a sit/stand option at 30 minute intervals; (2) could never climb ropes or scaffolds; (3) could occasionally climb stairs or ramps, stoop, bend, crouch, crawl, and reach overhead; (4) could occasionally push or pull or use foot controls with the lower extremities; could perform handling (gross manipulation) no more than frequently; (5) had to avoid concentrated exposure to full body vibration, vibratory equipment or vehicles, with no prolonged driving or riding in vibratory

7

Combs

vehicles; and (6) needed to avoid hazards such as dangerous machinery and unprotected heights. (Tr. 347-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 348-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Combs alleged disability due to constant back pain and limitations on operating equipment because of medication side effects. (Tr. 63, 321). He had stopped his work as a heavy equipment operator in February, 2003 due to these problems. (Tr. 321). His medications included Duragesic patches, a narcotic. (Tr. 328).

The ALJ rejected residual functional capacity assessments prepared by treating sources in favor of functional capacity assessments prepared by non-examining state agency reviewers who did not have access to the entire record. See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In view of the fact that no treating or examining source clearly supports the ALJ's choice of hypothetical factors, and the considerable objective evidence supporting greater restrictions, a remand will be required for further consideration.

Records from treating sources include office notes from Dr. Cary Twyman, a neurologist, from 2003. His examinations showed decreased range of motion and

8

muscle spasm in the lumbar spine, as well as restricted cervical range of motion. (Tr. 211, 215-16). Dr. Twyman obtained an MRI of the lumbar spine showing significant compression of the thecal sac at L4-5 with grade I spondylolisthesis at L5-S1, left-sided foraminal and extraforaminal disc herniations superimposed on a diffuse disc bulge at L3-4 causing significant left-sided foraminal stenosis and possible compression of the left L3 nerve root, and degenerative changes at essentially all levels. (Tr. 218-19). An MRI of the cervical spine showed a broad herniation at C6-7. (Tr. 220). Further testing by Dr. Twyman also showed decreased sensation in the left and right fingers and positive Phalan's and Tinel's tests, and the physician diagnosed bilateral carpal tunnel syndrome. (Tr. 215-16). In December, 2003, Dr. Twyman, noting the plaintiff's complaints of right shoulder pain, found "obvious" restricted range of motion and painful movements. (Tr. 207-8). Dr. Twyman did not list specific functional restrictions, however.

Mr. Combs was treated by a pain specialist, Dr. L. Douglas Kennedy, on referral from Dr. Twyman. Dr. Kennedy reviewed the MRIs and also referred to a positive EMG/NCV test by Dr. Twyman showing bilateral carpal tunnel syndrome. (Tr. 124-5). Additionally, Dr. Kennedy made reference to an examination by Dr. Vaughan, who opined that the plaintiff was not a current candidate for surgery, although he might be at some point. (Tr. 125). Dr. Kennedy provided medications, performed lumbar injections, and gave the plaintiff a work excuse for three months in April, 2003, which he later extended until July. (Tr. 119, 127).

9

The plaintiff's most recent treating family physician, Dr. Darian Ratliff, completed a functional capacity assessment on January 10, 2005 limiting Mr. Combs to lifting no more than 10 pounds occasionally and less than full-time sitting, standing, and walking, in addition to having other restrictions. (Tr. 282-4).

Dr. Ionut Stefanescu, who the plaintiff testified had recently taken over his pain management treatment from Dr. Cesar O. Agtarap (Tr. 344), also submitted an assessment dated January 13, 2005 indicating that the plaintiff was limited to sedentary level exertion, but with the ability to stand or walk approximately four hours and sit approximately four hours in an eight-hour day, no more than 30 minutes without interruption in addition to having additional non-exertional restrictions. (Tr. 279-81).

The ALJ declined to accept the opinions of these sources. (Tr. 18). While Dr. Ratliff did not provide much detail in his office notes, there is at least some indication of muscle spasm, neck tenseness, and headaches, consistent with the MRI results (Tr. 290), and Dr. Stefanescu, who performed sacroiliac injections, found tenderness in the cervical and lumbar areas, decreased range of motion of the lumbar spine, positive straight leg raising, left leg swelling, and a positive Patrick's test bilaterally.[1] His evaluation was generally consistent with Dr. Agtarap, an associate of Dr. Stefanescu who had previously provided pain management (Tr. 270), and the

[1]Patrick's test indicates arthritis of the hip. Dorland's Illustrated Medical Dictionary, 27th ed., p. 1688.

10

Combs

previously-mentioned Dr. Twyman. (Tr. 216).  Both Dr. Stefanescu and Dr. L.
Douglas Kennedy, another previous physician, found no signs of symptom
exaggeration. (Tr. 126, 276).

Given the great weight to which the opinions of treating sources are entitled
if supported by objective evidence, which in this case includes MRI examinations as
well as physical findings, and the fact that much of the evidence was not viewed or
commented upon by the state agency reviewers (Tr. 129-38, 221-6), the decision is
not supported by substantial evidence. At a minimum, the ALJ should have obtained
an opinion from a medical expert with access to the entire record if the examining
opinions  were to be rejected.

The decision will be remanded for further consideration.

This the ___25___ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11